16

DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
jdreher@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:    916.444.1000
Facsimile:    916.444.2100

BANKS & WATSON
JAMES J. BANKS (Bar No. 119525)
jbanks@bw-firm.com
W. DAVID CORRICK (Bar No. 171827)
dcorrick@bw-firm.com
901 F Street, Suite 200
Sacramento, California  95814-0733
Telephone:    916.325.1000
Facsimile:    916.325.1004

Attorneys for Creditors
OMAR JAY ON and BARBARA ON

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re | Case No. 20-20457 |
| NORTH VALLEY DERMATOLOGY CTR., a California general partnership, | Chapter 11 |
| | DCN: DB-002 |
| Debtor. | **MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7** |
| | **[11 U.S.C. § 1112]** |
| | Date:        March 4, 2020 |
| | Time:        11:00 a.m. |
| | Crtrm.:      35 |
| | Judge:       Hon. Christopher M. Klein |

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 1 |
| | A. | The Parties | 1 |
| | B. | A Dispute Regarding Mr. On's Compensation Led to Arbitration Proceedings | 2 |
| | C. | The On Creditors Prevailed at Arbitration | 2 |
| | | 1. Interim arbitration award in favor of On Creditors | 2 |
| | | 2. Fees and costs award in favor of On Creditors | 3 |
| | | 3. Final award in favor of On Creditors | 3 |
| | D. | The On Creditors Sought Judicial Confirmation of the Final Award Against NVDC | 3 |
| | E. | NVDC Wholly Ignored the Arbitration Award | 4 |
| III. | PROCEDURAL HISTORY – BANKRUPTCY COURT | | 4 |
| IV. | RELIEF REQUESTED – CONVERSION TO CHAPTER 7 | | 6 |
| V. | LAW AND ARGUMENT | | 6 |
| | A. | Cause Exists to Convert This Case to Chapter 7 | 6 |
| | | 1. The estate is suffering continuing losses and diminution of value | 7 |
| | | 2. There is no reasonable likelihood of rehabilitation | 7 |
| | | 3. NVDC is dissolving – it cannot effectuate a reorganization plan | 8 |
| | | 4. The Debtor's management is inherently conflicted | 9 |
| | B. | NVDC's Wind-Down Budget Shows Abundant Cause for Chapter 7 Conversion | 10 |
| VI. | CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bank of America Nat'l Trust &Sav. Ass'n v. 203 North LaSalle Street Partnership*,
    526 U.S. 434 (1999) ............................................................................... 9

*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985) ............................................................................. 11

*Gumport v. China & Inv. Corp. (In re Intermagnetics Am., Inc.)*,
    926 F.2d 912 (9th Cir. 1991) ................................................................ 11

*In re Citi-Toledo Partners*,
    170 B.R. 602 (Bankr. N.D. Ohio 1994) ................................................. 7

*In re Fiesta Homes of Georgia, Inc.*,
    125 B.R. 321 (Bankr. S.D. Ga. 1990) ................................................. 10

*In re Great American Pyramid Joint Venture*,
    144 B.R. 780 (Bkrtcy.W.D.Tenn.1992) ............................................. 8, 9

*In re Johnston*,
    149 B.R. 158 (Bankr. 9th Cir.1992) ...................................................... 9

*In re Koerner*, 800 F.2d 1358 (5th Cir. 1992) ........................................... 9

*In re L.S. Good & Co.*,
    8 B.R. 312 (Bankr. N.D. West Virginia 1980) .................................... 10

*In re Local Union 722 Int'l Bhd. of Teamsters*,
    414 B.R. 443 (Bankr.N.D.Ill.2009) ....................................................... 9

*In re Nautilus of New Mexico*,
    83 B.R. 784 (Bankr. D. N.M. 1988) ................................................... 10

*In re Pappas*,
    17 B.R. 662 (Bkrtcy.Mass.1982) .......................................................... 7

*NLRB v. Bildisco & Bildisco*,
    465 U.S., 513 (1984) ............................................................................. 9

*United States v. Whiting Pools*,
    462 U.S. 198 (1983) ............................................................................. 9

**Statutes**

Cal. Code of Civ. Proc. § 685.010 ............................................................. 4

Cal. Corps. Code § 16306 .......................................................................... 4

Cal. Lab. Code § 238 .................................................................................. 8

Cal. Lab. Code § 2802 ................................................................................ 2

**Treatises**

11 U.S.C. § 1109(b) .................................................................................... 6

11 U.S.C. § 1112(b) ................................................................................. 6, 7

11 U.S.C. § 704 ........................................................................................ 11

11 U.S.C. § 721 ........................................................................................ 11

7 Collier on Bankruptcy ¶ 1112.04[5][b]...................................................................................... 9

## I. INTRODUCTION

Pursuant to section 1112, creditors Omar Jay On and Barbara On (the "On Creditors") hereby seek immediate entry of an order of this Court converting the voluntary petition for bankruptcy Debtor-in-possession North Valley Dermatology Center ("NVDC", "Debtor", or "DIP"), a general partnership, filed on January 28, 2020, under 11 U.S.C. sections 1101, et seq. ("Chapter 11")[1] to a proceeding under sections 701, et seq. ("Chapter 7").[2]  As particularized herein, the papers submitted by NVDC – in combination with the representations its counsel have made before this Court – demonstrate more than ample cause for conversion.  NVDC's general partners have proven themselves either incapable – or more likely unwilling – to satisfy their fiduciary obligations to NVDC's creditors.  Left to their own devices, they have engaged in a systematic scheme to dissipate NVDC's assets to their own benefit and at the expense of NVDC's creditors.  An independent third-party trustee is required to oversee the wind-down of NVDC's business operations and asset liquidation announced with its bankruptcy filing, and to perform an examination of the approximately $2.5 million NVDC's general partners distributed to themselves in the last calendar year alone.

## II. FACTUAL BACKGROUND

### A. The Parties.

NVDC is a general partnership with two professional medical corporations as its current general partners: Stephen A. Vannucci, M.D., Inc. ("SAVI") and F. Paul Sajben, M.D., a Professional Corporation ("FPSI").  Kafele T. Hodari, M.D., Inc. ("KTHI") and Donald Richey, M.D., Inc., a Professional Corporation ("DRI") were general partners of NVDC when the events giving rise to NVDC's obligation to the On Creditors occurred.  SAVI, FPSI, KTHI and DRI are fully owned and controlled by Stephen A. Vannucci, M.D. ("Dr. Vannucci"), F. Paul Sajben, M.D. ("Dr. Sajben"), Kafele T. Hodari, M.D. ("Dr. Hodari") and Donald Richey, M.D. ("Dr. Richey"), respectively.

---

[1] Unless otherwise indicated, all code references herein are to Title 11 of the United States Code.

[2] This motion is filed and served in accordance with the Court's order dated January 29, 2020, authorizing any party (in conjunction with the March 4, 2020 preliminary status conference) to move for an order to convert this case to another chapter of the Bankruptcy Code, provided such a motion is filed and served at least seven calendar days prior to the conference. (Docket No. 20.)

Omar Jay On ("Mr. On") is a physician assistant who was employed by SAVI and NVDC during the timeframe NVDC's current obligation to the On Creditors arose – October 1, 2010 through July 2, 2013. Barbara On ("Ms. On") is Mr. On's spouse.

**B.      A Dispute Regarding Mr. On's Compensation Led to Arbitration Proceedings.**

A dispute arose between Mr. On and his employers – SAVI and NVDC – concerning Mr. On's compensation. After Mr. On's efforts to reach a satisfactory resolution of the dispute failed, he resigned his employment effective July 2, 2013, and sought legal recourse to collect unpaid wages. The matter was eventually submitted to binding arbitration proceedings pursuant to an arbitration clause set forth in Mr. On's written employment agreement ("Employment Agreement").

**C.      The On Creditors Prevailed at Arbitration**.

The On Creditors on the one hand, and SAVI and NVDC on the other, mutually selected Catherine C. Harris ("the Arbitrator") to serve as neutral arbitrator. The Arbitrator conducted and presided over arbitration proceedings between the parties over a seven-day period: November 5, 6, 7, 8, 9, 13 and 14, 2018.

**1.      <u>Interim arbitration award in favor of On Creditors.</u>**

On June 3, 2019, the Arbitrator issued an interim arbitration award ("Interim Award") in which she held the compensation scheme set forth in the Employment Agreement was void and unenforceable because it contravened public policy as expressed in California Labor Code section 2802, and that quantum meruit – the reasonable value of Mr. On's services during the operative time period – was the appropriate remedy. The Arbitrator placed the value of Mr. On's uncompensated labor at $470,055.00, and awarded pre-judgment interest on that amount at a simple rate of 7%. The Arbitrator further found Mr. On was a non-exempt employee at all relevant times and was entitled to recover unpaid compensation for overtime[3] and missed meal breaks and rest periods. She awarded missed meal break and rest period compensation of $69,939.00 and $88,890.00, respectively, and awarded pre-judgment interest on those amounts at a simple rate of 7%. Finally, the Arbitrator ruled NVDC was liable for $48,729.33 in unpaid compensation in the form of wage restitution based upon its practice of deducting its own mandatory 401k

---

[3] Even though the Arbitrator found Mr. On was entitled to overtime compensation, she reasoned that his overtime compensation was subsumed within her award for the reasonable value of his services.

employer contributions from Mr. On's wages – not only for employer contributions NVDC made on behalf of Mr. On, but also those it made on behalf of other NVDC employees.[4]  The combined total of the award for unpaid compensation and wage restitution set forth in the Interim Award is $677,613.33, plus pre-judgment interest – which was $315,653.80 as of the date of issuance – for a total award of **$993,267.13**.

### 2.  Fees and costs award in favor of On Creditors.

The Interim Award invited the On Creditors to file an application for attorneys' fees and costs – an invitation they accepted.  On November 12, 2019, the Arbitrator issued her ruling on the On Creditors' motion for attorneys' fees and costs ("Fees and Costs Award").  The Arbitrator found the On Creditors prevailed on the bulk of their claims – thus achieving their primary litigation objectives – and were entitled to an award of reasonable attorneys' fees and costs.  She awarded attorneys' fees and costs of $1,328,812.07 and $152,083.65, respectively, for a total of **$1,480,895.72**.

### 3.  Final award in favor of On Creditors.

On December 16, 2019, the On Creditors obtained a final arbitration award of approximately $2.5 million against NVDC and SAVI ("Final Award").  The Final Award incorporated the findings and amounts awarded under the Interim Award and the Fees and Costs Award, and added calculated interest through the date of the Final Award for a total award of **$2,497,802.41** – the current obligation NVDC owes the On Creditors.

### D.  The On Creditors Sought Judicial Confirmation of the Final Award Against NVDC.

After the Final Award issued, the On Creditors submitted a Verified Petition to Confirm Final Award of Arbitrator and Enter Judgment in Conformity Therewith ("Petition") to the Butte County Superior Court, and the hearing on the Petition was set for January 29, 2020.[5]  In order to prevent judgment from being entered against it pursuant to the Final Award, NVDC filed its Chapter 11 bankruptcy petition on January 28, 2020 – the same day the state court issued its tentative ruling granting the On Creditors' Petition to Confirm the Final Award.  Of course, as the state court ruled, the automatic stay afforded NVDC in the state court case does not extend to SAVI.

---

[4] The Arbitrator did not confer pre-judgment interest as to the wage restitution portion of the award.

[5] Butte County Superior Court Case No. 19CV03586.

The Petition has been granted as to SAVI, and judgment was entered on or about February 13, 2020.[6] Upon entry of judgment, interest accrues on all unsatisfied amounts at the rate of 10% per annum. (Cal. Code of Civ. Proc. § 685.010(a).) Further, the On Creditors are entitled to recover their costs to enforce the judgment, including attorneys' fees.

### E.     NVDC Wholly Ignored the Arbitration Award.

It is important to note NVDC's general partners distributed almost the full amount of the Final Award to themselves in 2019 alone – all while the litigation with the On Creditors was pending and even in the face of the Arbitrator's Interim Award. (See, NVDC's Statement of Financial Affairs at Attachment 4.1 (Docket No. 1).)[7] Despite the partnership obligation set forth in the Interim Award, the specter of a substantial attorneys' fees and costs award, and the accrual of pre-judgment interest, NVDC continued to pay its general partners in a "business as usual" fashion – as if the obligation did not even exist. Now that attorneys' fees and costs have been added and interest has continued to accrue – resulting in the current $2.5 million obligation NVDC owes the On Creditors – NVDC's general partners persist in their efforts to fleece the partnership and evade their financial obligations.

The obligation NVDC owes the On Creditors is not an ordinary business obligation – it is borne of unpaid compensation that inured to the direct benefit of NVDC and each of its general partners. In other words, the obligation essentially represents wage theft – consisting of monies that should have been paid to the On Creditors in the first instance, rather than being used to line the pockets of NVDC and its general partners.

### III.     PROCEDURAL HISTORY – BANKRUPTCY COURT

As noted, *supra*, NVDC filed a voluntary Chapter 11 bankruptcy petition on January 28, 2020. Along with the petition, NVDC filed Schedules A/B, D, E/F, G and H, and a Statement of Financial Affairs

---

[6] Pursuant to Corporations Code section 16306(a), general partners are jointly and severally liable for all partnership obligations. Therefore, the On Creditors intend to file motions with the state court to add the general partner medical corporations to the judgment – as well as the individual doctors as the sole shareholders and alter egos of those entities – pursuant to California Code of Civil Procedure section 187, and other provisions of law.

[7] Indeed, even *after* the Interim Award conferring an obligation of almost $1 million on NVDC was issued on June 3, 2019 – following five years of litigation during which time the insider general partners were taking millions out of the business –the insider general partners distributed approximately $910,553 to themselves in 2019. Some independent third party must examine these transfers. Surely the general partners will not do so – despite the fact they are now fiduciaries to NVDC's creditors and the estate.

("SOFA"). (Docket No. 1.) The filed documents reveal NVDC has unsecured debt of $2,615,187.82, of which $2,497,802.40 – over 95% – is owed the On Creditors. The SOFA reflects distributions to the Debtor's insider general partners of approximately $2.25 million in 2019. (Docket No. 1, SOFA at Attachment 4.1.)

On January 29, 2020 – the day after filing its Chapter 11 petition – NVDC filed two motions: (1) Motion for Authorizing Continued Use of Existing Cash Management System and Operation Bank Account ("Continued Use Motion"); and, (2) Emergency Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits ("Wage Motion"). (Docket Nos. 6-11 and 12-19, respectively.) In support of its Wage Motion, NVDC filed a declaration executed by Dr. Sajben ("Sajben Decl."). (Docket No. 16.) In his declaration, Dr. Sajben confirms NVDC is dissolving and winding up its business because it lacks the resources to satisfy its obligations to its creditors. (Sajben Decl. at ¶¶ 6-7.) According to Dr. Sajben, NVDC's reason for seeking bankruptcy protection is to "continue" with an orderly liquidation of assets "pursuant to a plan of liquidation" in order to "fairly, justly, and equitably distribute available funds to its creditors." (*Id.* at ¶ 5.) The estimated period of time offered to complete the liquidation process is "approximately" 120 days. (*Ibid.*)[8]  Through Dr. Sajben, NVDC claims that absent the protection of the vested automatic stay under section 362, the enforcement of creditor claims would "interfere" with its ability to pay its employees and to complete an orderly transition of its patients to other care providers.[9] (*Id.* at ¶ 7.)

The Continued Use Motion and Wage Motion were initially heard on shortened time on February 4, 2020. At the hearing the Court directed NVDC to provide supplemental briefing on the motions and scheduled a further hearing for February 18, 2020.[10] In conjunction with its supplemental briefing on the Wage Motion, NVDC sought authority to pay its insider general partners Drs. Vannucci and Sajben the equivalent of gross annual salaries of $ $480,000 and $384,000, respectively – *plus* 30% of profits – to

---

[8] NVDC has admittedly taken no steps to transfer its patients and wind-down its affairs. Having known for months that it was going to close its doors and transfer patients – preferably to its own insider general partners – NVDC should have either accomplished those transfers pre-petition, or waited to file this bankruptcy case. There is simply no cogent explanation for the timing of NVDC's bankruptcy filing, except the obvious – to avoid entry of judgment in Butte County.

[9] NVDC's stated "concern" regarding the transition of patient care is particularly suspect given the fact NVDC is conspicuously seeking to "transition" its patients to new practices formed by Drs. Vannucci and Hodari. (See, section V(A)(2), *infra*.)

[10] On February 13, 2020, the United States Trustee for Region 17 filed an opposition to NVDC's Continued Use Motion. (Docket No. 45.)

{00094763.DOCX; 1 }1608110v3                                5

"manage" NVDC's "wind-down." (Docket No. 41 at Exhibit D.) After the On Creditors filed an opposition to the supplemental briefing (Docket No. 47), NVDC proposed an amended wind-down budget whereby Dr. Vannucci would take 21% of profits – while retaining the equivalent of a $480,000 gross annual salary – and Dr. Sajben would take 20% of profits and a "reduced" equivalent of a $240,000 gross annual salary.

At the February 18, 2020 hearing, the Court raised some very pointed questions concerning NVDC's "guesstimated" wind-down budget – particularly as to the proposed insider general partner compensation. Ultimately, the Court issued interim orders allowing compensation at a much lower rate than requested, and scheduled the Wage Motion for further proceedings on March 18, 2020.

## IV.     RELIEF REQUESTED – CONVERSION TO CHAPTER 7

Based upon the request of a party in interest[11] – after notice and a hearing, and for cause shown – the court shall convert a Chapter 11 case to a Chapter 7 case or shall dismiss the case, unless the court determines appointment of a trustee or an examiner under section 1104(a) is in the best interests of creditors and the estate. (11 U.S.C. § 1112(b)(1).)[12] As more fully developed, *infra*, the On Creditors submit good cause exists for the requested conversion. Therefore, the On Creditors seek immediate entry of an order converting this case to a Chapter 7 proceeding.

## V.     LAW AND ARGUMENT

### A.     Cause Exists to Convert This Case to Chapter 7.

While not delimiting the boundaries of what constitutes "cause" to convert of a Chapter 11 case to Chapter 7, section 1112(b)(4) does provide several examples of the types of cause warranting conversion.

---

[11] Section 1109(b) defines a "party in interest" to include a creditor, and expressly authorizes a party in interest to raise, appear, and be heard on any issue in a Chapter 11 case. Thus, as creditors of the estate, the On Creditors have standing to bring this motion.

[12] The exception to this mandatory provision is where the court specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes a number of delineated elements. (11 U.S.C. § 1112(b)(2).) The exception is not applicable in this instance.

1  One example – which is clearly operative in this case – is continuing loss to or diminution of the estate

2  and the absence of a reasonable likelihood of rehabilitation.   (11 U.S.C. § 1112(b)(4)(A).)   Other

3  circumstances recognized by law as giving rise to a finding of cause sufficient to order conversion are also

4  evident here:  (1) the debtor's inability to effectuate a plan of reorganization; and (2) inherent conflicts of

5  interest.[13]

6  **1.**    **The estate is suffering continuing losses and diminution of value.**

7  Where the debtor's liabilities outstrip the value of its assets, continuing losses to or diminution of

8  the estate will be found to exist.  (*In re Pappas*, 17 B.R. 662, 666-67 (Bkrtcy.Mass.1982).)  In this instance,

9  NVDC's own papers demonstrate its liabilities far outstrip its assets, and that its value is rapidly

10  diminishing.   By its own calculations, and with no apparent provisions for professional fees or similar

11  administrative costs, NVDC's proposed wind-down budget reveals that allowing the general partners to

12  liquidate the business will cost the estate $1,412,416.30 in the next approximately ten-week period against

13  projected income of $1,667,238.70 – the delta of which is $254,822.40.  To frame that result, as of the

14  petition date the Debtor's schedules reflected cash of $146,863.02, in addition to receivables of $354,788,

15  for a total of $501,651.02.  Through its general partners, NVDC is proposing to ***reduce the value of cash***

16  ***assets available to repay its creditors by half***.

17  In compliance with its fiduciary duties, NVDC should close its doors now, or – at a minimum –

18  stipulate to the appointment of a trustee.  Continuing operations only works to the benefit of NVDC and

19  its insider general partners at the expense of its creditors – especially the On Creditors.[14]

20

21  **2.**    **There is no reasonable likelihood of rehabilitation.**

22  Once the court finds continuing loss to or diminution of the estate, it must then determine whether

23  there is a "reasonable likelihood of rehabilitation"; i.e., whether the causes of the losses and diminishment

24  can be corrected.  (*In re Great American Pyramid Joint Venture*, 144 B.R. 780, 790 (Bkrtcy. W.D. Tenn.

25

26  _____

27  [13] The facts outlined herein in support of this motion are contained within the Debtor's own court filings.  As matters of record, the On Creditors request the court to take judicial notice thereof.

28  [14] NVDC is not looking for leeway to effectuate reorganization.  Its stated intent is to cease operations altogether.  Diminution in the value of an estate may be found where the Debtor has ceased to operate its business. (See, e.g., *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994).)

{00094763.DOCX; 1 } 1608110v3

MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7

1    1992.).) A "reasonable likelihood" of rehabilitation requires demonstration of a viable plan. As noted by

2    the *Great American Pyramid* court, rehabilitation plans that are hopeless on their face or merely visionary

3    will not suffice: "When visionary schemes for rehabilitation entail significant risk to creditors without any

4    reasonable probability that the debtor can successfully rehabilitate, conversion or dismissal is generally in

5    order." (*Id.* at 791.)

6    Here, there is **no plan** for rehabilitation – hopeless, visionary, or otherwise. NVDC has notified

7    the court, the public, and its patients that it is closing its doors. Indeed, in a letter dated December 9, 2019,

8    and executed by Drs. Vannucci, Sajben, and Hodari, NVDC advised its patients that the practice would

9    be closing effective March 31, 2020, and they would need to find alternative care by that date.[15] Not

10   surprisingly – and completely consistent with the general partners' modus operandi – the letter offers the

11   newly formed medical practices of Dr. Vannucci and Dr. Hodari as viable options.[16]

12   Given NVDC's stated intent to discontinue as an entity, it plainly has no intent or incentive to rehabilitate

13   its business, which inexorably leads to the conclusion that there is no "reasonable likelihood" of

14   rehabilitation – in reality, by NVDC's own confession, there is no possibility at all.

15                    **3.      NVDC is dissolving – it cannot effectuate a reorganization plan.**

16           Chapter 11 procedures have been designed "to give a failing business a breathing spell while it

17   attempts to work out its financial problems." (*Great American Pyramid, supra,* at 788.) The fundamental

18   purpose of Chapter 11 bankruptcy is to prevent a debtor from going into liquidation, with an attendant

19   loss of jobs and possible misuse of economic resources. (*NLRB v. Bildisco & Bildisco,* 465 U.S., 513,

20   528 (1984).) The ultimate goal under Chapter 11 is "the judicial confirmation of a reorganization plan

21   that enables the debtor to restructure its pre-bankruptcy debts, pay its creditors, and return to active

22   _____

23   [15] At the February 18, 2020 hearing, NVDC conceded the December 9, 2019 letter advising of its closure was actually sent to
     its patients, but now allegedly disavows its contents.

24   [16] By establishing new medical practices to avoid their obligations to the On Creditors, Drs. Vannucci and Hodari are playing
     a dangerous game. Recognizing the problem caused by irresponsible employers that may have hidden cash assets, declared

25   bankruptcy, or otherwise made themselves judgment proof to avoid adverse wage judgments, the California State Legislature
     has enacted a number of statutes that impose civil and criminal liability on such employers, including prohibition from

26   conducting business in California. For example, under California Labor Code section 238, when an employer fails to satisfy a
     judgment arising from the employer's non-payment of wages, that employer "shall not" conduct business in the state unless

27   the employer has obtained a bond from a surety company and has filed a copy of that bond with the Labor Commissioner.
     (*Ibid.*) Where an employer conducts business in violation of section 238, the Labor Commissioner is empowered to issue and

28   serve on that employer a stop order prohibiting the use of employee labor until the employer complies with the statute. (*Id.* at
     238.1(a).)

1   operation as a viable enterprise free from judicial control and creditor scrutiny." (*Great American*

2   *Pyramid*, *supra*, at 788.)    As the Supreme Court observed, in providing for Chapter 11 reorganization,

3   "Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to

4   produce a return for its owners." (*United States v. Whiting Pools*, 462 U.S. 198, 203 (1983).)  In sum, the

5   primary policy objectives underlying Chapter 11 protection are: (1) preserving going concerns; and, (2)

6   maximizing property available to satisfy creditors.  (*Bank of America Nat'l Trust & Sav. Ass'n v. 203*

7   *North LaSalle Street Partnership*, 526 U.S. 434, 453 (1999).)

8         NVDC's stated aims in seeking bankruptcy protection do not comply with the underlying

9   purposes, goals, or objectives of Chapter 11.  NVDC is neither preserving itself as a going concern, nor is

10  it maximizing property available to satisfy creditors.  Rather, it is admittedly seeking to permanently

11  suspend its operations, and its proposed wind-down budget depletes resources.  NVDC's unstated aims in

12  seeking bankruptcy protection are abundantly obvious from its actions – maximizing the profits and

13  compensation of its insider general partners while simultaneously minimizing available resources to

14  satisfy its debts.

15        The inability of a debtor to effectuate a plan of reorganization constitutes cause for conversion or

16  dismissal. (*In re Johnston*, 149 B.R. 158, 162 (Bankr. 9th Cir.1992); see also, *In re Koerner*,

17  800 F.2d 1358, 1368 (5th Cir. 1992) [holding that a debtor's inability to effectuate a plan constitutes cause

18  to convert a case to Chapter 7].)[17]   Where, as here, no reasonable possibility exists for an effective

19  reorganization – if for no other reason than NVDC is admittedly not seeking to reorganize – the bankruptcy

20  court need not delay in ordering conversion to Chapter 7. (*Johnston*, *supra*, at 162.)

21             **4.**    **The Debtor's management is inherently conflicted.**

22        Liquidation by a DIP should not be permitted and conversion to Chapter 7 is appropriate in a

23  Chapter 11 liquidation case where there may be a conflict of interest between the debtor and those with

24  whom the debtor is dealing during the liquidation phase. (*In re L.S. Good & Co.*, 8 B.R. 312, 314-15

25  (Bankr. N.D. West Virginia 1980).)  For example, in a case where the bankruptcy court found a debtor's

---

26  [17] While this explicit ground for cause was eliminated from section 1112(b) secondary to amendment in 2005, Collier observes

27  it is still applicable where a party ostensibly filed a chapter 11 case to reorganize, "but has no reasonable prospects of confirming
a plan." (7 Collier on Bankruptcy ¶ 1112.04[5][b].)  Indeed, courts have held that the inability to effectuate a reorganization

28  plan remains grounds for dismissal or conversion after the 2005 amendment. (See, e.g., *In re Local Union 722 Int'l Bhd. of
Teamsters*, 414 B.R. 443, 451–52 (Bankr. N.D. Ill. 2009).)

{00094763.DOCX; 1 }1608110v3

1  insiders were the recipients of significant pre-petition transfers from the debtor, the court denied plan

2  confirmation and appointed a trustee as a result of the inherent conflict.  (*In re Fiesta Homes of Georgia,*

3  *Inc.*, 125 B.R. 321, 325-26 (Bankr. S.D. Ga. 1990); see also; *In re Nautilus of New Mexico*, 83 B.R. 784,

4  789, (Bankr. D. N.M. 1988) [noting that a DIP has a fiduciary duty to preserve estate assets for benefit of

5  creditors and when incapable of performing that duty, a trustee is properly appointed].)

6       The conflict of interest between NVDC and its general partners is unmistakable and egregious.

7  NVDC's SOFA reveals massive transfers to its general partners in the last year – and it is almost certain

8  that an examination of transfers in prior years would uncover similar transfers.  It is worth noting again,

9  that while the litigation between the On Creditors and NVDC was pending – and even after the Interim

10  Award issued – NVDC did not make any reductions in distributions to its general partners, nor did it take

11  any steps whatsoever to meet its obligations to the On Creditors.  As a DIP, NVDC has a fiduciary duty

12  to examine and/or pursue these avoidance actions, but NVDC is operated and controlled by its general

13  partners – the very beneficiaries of NVDC's avoidance actions.  NVDC's management is clearly and

14  severely conflicted.  The only way to address that conflict is convert this case to a Chapter 7 proceeding

15  so an independent trustee can fulfill the fiduciary duties NVDC has breached and undoubtedly will

16  continue to breach during its liquidation process.

17  **B.**    **NVDC's Wind-Down Budget Shows Abundant Cause for Chapter 7 Conversion.**

18       On first blush and with very little analysis required, it is curious that NVDC filed for Chapter 11

19  bankruptcy protection.  It is plainly obvious from its filings that NVDC is not looking for "breathing

20  room" to reorganize and carry on as a remunerative enterprise.  Its only goal is to cease operations,

21  liquidate its assets, and transfer its patients to insider general partners.  The case should never have been

22  filed under Chapter 11 in the first instance.

23       NVDC's submitted wind-down budget appears highly malleable, at best.  Indeed, the proposed

24  wind-down does not even arise to the level of an estimate – it is a self-described "guesstimate."[18]  The

---

25
26  [18] Among other things, there is nothing that actually requires the doctors to see patients in exchange for their proposed salaries, and the claimed operating expenses of over $800,000 for ten (10) weeks – without any further breakdown – appears seriously over-inflated.  In short, the wind-down budget raises many more questions than it answers. For example, why does NVDC have
27  to pay to transfer patient records when it appears they are staying in the same building and simply moving to Dr. Vannucci's new practice?  Why should Dr. Vannucci not pay the transfer costs?  Why would NVDC make contributions to its pension plan?
28  Why does NVDC need tail insurance coverage?  How much is the rent for NVDC's office space?  Why is the payroll so large for a two-doctor practice?  Why are there approximately 30 employees for only two doctors?

{00094763.DOCX; 1 }1608110v3

1  wind-down illuminates the problem with NVDC's insider control and leads to the ineluctable conclusion

2  that the general partners are utilizing the bankruptcy process to self-deal. They are intent on being paid

3  handsomely for the favor of transferring NVDC's patients and assets to themselves, and leaving NVDC a

4  hollow shell with substantially less assets than it had when it filed for Chapter 11 protection. All the while

5  the insider general partners have refused to pay a single penny to satisfy NVDC's obligations to its

6  creditors – obligations they are ultimately responsible for as general partners of NVDC. This is not an

7  appropriate use of Chapter 11, which is designed to provide the debtor with a path to solvency.

8    In sum, there is simply no reason this case should proceed under Chapter 11. NVDC is not seeking

9  to reorganize and carry its business and its general partners refuse to satisfy their fiduciary duties to

10 NVDC's creditors – their only motivation seems to be to gut the business and retain as much of the

11 revenues as possible.[19] The general partners are possessed of clear conflicts of interest – they will never

12 examine the massive distributions they have made to themselves over the years while the large contingent

13 obligation of the litigation was pending, and even after the Arbitrator issued her rulings. A Chapter 7

14 trustee can oversee the transfer of patients, engage in an orderly wind-down for the conflicted general

15 partners, and, if necessary, operate the business for a brief period of time. (11 U.S.C. § 721; see also, 11

16 U.S.C. § 704(A)(12) (providing directions to trustees regarding the transfer of patient care from a closing

17 health care practice to another provider.)[20]

18 **VI.    CONCLUSION**

19    For the reasons set forth herein – and as further revealed by matters of record in this case –

---

[19] See, e.g., *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354-56 (1985) [noting that where a trustee is not appointed, the debtor's directors bear essentially the same obligations to creditors as would befall a trustee]; *Gumport v. China & Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991) [stating that officers of a DIP are officers of the court and have fiduciary duties as such].

[20] Indeed the chapter 7 trustee's handbook published by the Office of the United States Trustee describes the specific circumstances under which a chapter 7 trustee should consider short-term operation of a business. (See, https://www.justice.gov/ust/handbook-chapter-7-trustees.) Those circumstances may or may not be present here, but it is an independent fiduciary who should make that determination, not the conflicted general partners, who are also co-debtors with the Debtor.

1   the On Creditors respectfully request that the Court grant this motion and issue an immediate order to

2   convert this case to a proceeding under Chapter 7.

3   DATED:  February 26, 2020                    DOWNEY BRAND LLP

4

5                                        By:    _____
                                                       /s/ Jamie P. Dreher
6                                                   JAMIE P. DREHER
                                                   Attorneys for Creditors
7                                            OMAR JAY ON and BARBARA ON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28